JUL 19 2004 11:46 FR KING AND SPALDING    404 572 5145 TO 0252#05456#10504 P.03
Jul 16 04 02:53p    sri international legal

## NONDISCLOSURE AGREEMENT

THIS AGREEMENT is entered into and effective as of the 8th day of July, 2004 ("Effective Date") between Internet Security Systems, Inc. ("ISS"), a Georgia corporation, with an address at 6303 Barfield Road, Atlanta, Georgia 30328, and SRI International ("SRI"), a California non-profit corporation, with an address at 333 Ravenswood Avenue Menlo Park, CA 94025. For purposes of this Agreement, the terms ISS and SRI include parent and subsidiary companies of the party.

1.  SRI and ISS intend to enter into discussions and negotiations regarding a potential patent licensing arrangement and/or settlement of a dispute concerning United States Patent Nos. 6,321,338, 6,484,203, 6,711,615, 6,708,212 and 6704,874 (the "stated purpose"). During said discussions and negotiations, the parties will disclose to each other information and documents, which may include confidential information. The term "Confidential Information" will mean any business or financial information or data (but not information that constitutes prior art relevant to the referenced U.S. patents under 35 U.S.C. 102) which is disclosed by a party to the other party under or in contemplation of the stated purpose and which (a) if in tangible form or other media that can be converted to readable form, is clearly marked as proprietary, confidential or private when disclosed, or (b) if oral or visual, is identified as proprietary, confidential or private at the time of disclosure. Confidential Information may be either the property of the disclosing party or information provided by a corporate affiliate of the disclosing party or a third party. Confidential Information shall also include the existence and status of the parties' discussions and this Agreement. Disclosures under this Agreement may be made from the Effective Date of this Agreement until September 30, 2004, unless extended in a writing signed by both parties. Disclosures and receipt of Confidential Information will be by Richard Abramson on behalf of SRI and Sean Bowen, Esq. on behalf of ISS. The parties may designate others, in writing, to receive and disclose Confidential Information.

2.  For all Confidential Information, the recipient will:

    (a) use the Confidential Information only for the stated purpose;

    (b) restrict disclosure of the Confidential Information solely to those employees, consultants or agents of such party with a "need to know", provided that any such third party consultants or agents are not presently and have no present plans to become a competitor or an employee or consultant of a competitor of the disclosing party and that no disclosure is made to a third party (other than by a party to its outside counsel for the purpose of receiving legal advice) without the prior written consent of the disclosing party;

    (c) advise those employees, consultants or agents who gain access to Confidential Information of their obligations regarding the Confidential Information;

    (d) make only the number of copies of the Confidential Information necessary to disseminate the information to those employees who are entitled to have access to it, and ensure that all confidentiality notices set forth on the Confidential Information are reproduced in full on such copies; and

    (e) safeguard the Confidential Information with the same degree of care to avoid unauthorized disclosure as recipient uses to protect its own confidential and private information;

    (f) notify disclosing party immediately upon discovery of any unauthorized use or disclosure of Confidential Information or any other breach of this Agreement by recipient, its employees, consultants or agents and cooperate with disclosing party in every reasonable way to help disclosing party regain possession of the Confidential Information and prevent its further unauthorized disclosure or use.

    For purposes of this Agreement, a "need to know" means that the employee, consultant or agent requires the Confidential Information in order to perform his or her responsibilities in connection with the stated purpose.

3.  The obligations of Paragraph 2 will not apply to any Confidential Information which:

    (a) is or becomes available to the public through no breach of this Agreement;

    (b) was previously known by the recipient without any obligation to hold it in confidence;

    (c) is received from a third party free to disclose such information without restriction;

Internet Security Systems, Inc.
Confidential

JUL 19 2004 11:46 FR KING AND SPALDING   404 572 5145 TO 0252#05456#10504 P.04
JUL 16 04 02:55p

Nondisclosure Agreement
Page 2 of 3

    (d)  is independently developed by the recipient without the use of Confidential Information of the disclosing party; or

    (e)  is approved for release by written authorization of the disclosing party, but only to the extent of and subject to such conditions as may be imposed in such written authorization.

4. If the disclosing party inadvertently fails to mark as proprietary, confidential or private information for which it desires confidential treatment, it will so inform the receiving party. The receiving party thereupon will return the unmarked information to the disclosing party and the disclosing party will substitute properly marked information. In addition, if the disclosing party, at the time of disclosure, inadvertently fails to identify as proprietary, confidential or private oral or visual information for which it desires confidential treatment, it will so inform the receiving party. The receiving party's obligations under Paragraph 2 in connection with information encompassed by this paragraph will commence upon notice from the disclosing party of the failure to properly mark or identify the Confidential Information.

5. Each party acknowledges its obligation to control access to and/or exportation of technical data under the applicable export laws and regulations of the United States, and each party agrees to adhere to and comply with the laws and regulations governing any technical data received under this Agreement.

6. Confidential Information, including permitted copies, will be deemed the property of the disclosing party. The receiving party, will, within ten (10) days of a written request by the disclosing party, return all Confidential Information, including all copies, to the disclosing party and destroy all summaries, extracts, analysis, reports or other materials containing the disclosing party's Confidential Information. The receiving party will also, within ten (10) days of a written request by the disclosing party, certify in writing that it has satisfied its obligations under this Paragraph 6. The receiving party's obligations under Section 2 will expire five (5) years after return or destruction of the disclosing party's Confidential Information, provided, however, such obligations shall never expire with respect to software source code or trade secrets while such materials continue to constitute Confidential Information as defined herein.

7. Both parties agree that an impending or existing violation of any provision of this Agreement would cause the disclosing party irreparable injury for which it would have no adequate remedy at law, and that the disclosing party will be entitled to seek immediate injunctive relief prohibiting such violation, in addition to any other rights and remedies available to it.

8. Nothing contained in this Agreement or in any discussions undertaken or disclosures regarding the stated purpose will be deemed a commitment to engage in any business relationship, contract or dealing with the other party. The parties acknowledge that in the event that they develop, market and sell similar products and services nothing contained herein is intended to limit a party's activities or dealings except as expressly provided herein with respect to the disclosing party's Confidential Information.

9. No patent, copyright, trademark or other proprietary right is licensed, granted or otherwise transferred by this Agreement or any disclosure hereunder, except for the right to use such information in accordance with this Agreement. No warranties of any kind are given for the Confidential Information disclosed under this Agreement.

10. The term of this Agreement shall commence on the Effective Date and shall continue until expiration of the confidentiality period stated in Section 6.

11. This Agreement may not be assigned by either party without the prior written consent of the other party. Any assignment in violation of this Paragraph will be void. This Agreement will be binding upon the parties and their respective successors and assigns.

12. The provisions of this Agreement shall not prohibit a disclosure required by law or any court of competent jurisdiction or any investigation of a governmental or regulatory body which is lawfully entitled to require any such disclosure; provided that prior to such disclosure the receiving party shall promptly notify the disclosing party of such requirement so that the disclosing party may contest such disclosure and otherwise protect its interests in the timing and content of such disclosure. The receiving party will exercise reasonable efforts to help disclosing party obtain a protective order or other reliable assurance that confidential treatment will be accorded to the Confidential Information. If a protective order or other remedy is not obtained, the receiving

Internet Security Systems, Inc.
Confidential Information



JUL 19 2004 11:47 FR KING AND SPALDING    404 572 5145 TO 0252#05456#10504 P.05

Nondisclosure Agreement
Page 3 of 3

party will furnish only that portion of the Confidential Information that the receiving party is legally required to disclose.

13. Other provisions of this Agreement notwithstanding, all discussions and negotiations among the parties regarding the above-mentioned potential patent licensing arrangement and/or settlement, and documents prepared therefor and provided in connection therewith, shall be (i) treated as Confidential Information developed for purposes of settlement, (ii) exempt from discovery and production, and (iii) inadmissible in any lawsuit pursuant to Rule 408 of the Federal Rules of Evidence or in any binding arbitration or other dispute resolution proceeding. Documents identified in or provided with such discussions and negotiations, which are not prepared specifically therefor, are not so exempted and may, if otherwise admissible, be admitted in evidence in a lawsuit or other dispute resolution proceeding.

14. If any provision of this Agreement is held invalid or unenforceable, such provision will be deemed deleted from this Agreement and replaced by a valid and enforceable provision which so far as possible achieves the parties' intent in agreeing to the original provision. The remaining provisions of this Agreement will continue in full force and effect.

15. If either party files a legal action to enforce any rights arising out of the terms and conditions of this Agreement, the prevailing party in such action shall be entitled to recover reasonable attorneys fees expended in such action.

16. Each party warrants that it has the authority to enter into this Agreement and to lawfully make the disclosures contemplated hereunder.

17. This Agreement represents the entire understanding between the parties with respect to the subject matter hereof and supersedes all prior communications, agreements and understandings. The provisions of this Agreement may not be modified, amended or waived, except by a written instrument duly executed by both parties.

18. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original and all of which, when taken together, will be deemed to constitute one and the same agreement. Delivery of an executed counterpart of this Agreement by facsimile or any other reliable means shall be effective for all purposes as delivery of a manually executed original counterpart. Either party may maintain a copy of this Agreement in electronic form. The parties further agree that a copy produced from the delivered counterpart or electronic form by any reliable means (for example, photocopy, facsimile or printed image) shall in all respects be considered an original.

Internet Security Systems, Inc.

By: _____
Print Name: Sean Bowen
Title: Vice President and General Counsel
Date: 7/19/04

SRI International

By: _____
Print Name: RICHARD ABRAMSON
Title: VP LEGAL & BUSINESS AFFAIRS
Date: 7/16/04

Internet Security Systems, Inc.
Confidential Information

** TOTAL PAGE.05 **