ORIGINAL



FILED IN CLERK'S OFFICE
C. Atlanta

OCT 1 8 2004

LUTHER D. THOMAS, Clerk
By:
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

INTERNET SECURITY SYSTEMS,
INC., a Georgia Corporation,

        Plaintiff,

    v.                            Civil Action No. 04-CV-2402-CC

SRI INTERNATIONAL, INC., a
California Corporation,

        Defendant.

**SRI INTERNATIONAL, INC.'S REPLY
IN SUPPORT OF ITS MOTION
<u>TO DISMISS PURSUANT TO RULE 12(b)(1)</u>**

## I.    INTRODUCTION

Exercising jurisdiction in view of the facts present here will not serve the

objectives of the Declaratory Judgment Act and would be contrary to the public

policy behind it. This is simply not the kind of situation the Act is intended to

address, wherein

> [A] patent owner engages in a *danse macabre*,
> brandishing a Damoclean threat with a sheathed
> sword…. Guerilla-like, the patent owner attempts extra-
> judicial patent enforcement with scare-the-customer-and-
> run tactics that infect the competitive environment of the
> business community with uncertainty and insecurity.

Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d at 734-35 (Fed. Cir.

1988) (citations omitted). SRI never contacted any ISS customers, never made any

public comments about ISS or, indeed, made any express threats of litigation. ISS

was under no cloud, that could be cleared only by resort to the courts. Rather, SRI

had offered ISS a license and was participating in private, good faith negotiations

up to and through the date ISS filed its suit. ISS was at no business disadvantage

nor was there danger of imminent litigation.

ISS's weak attempt to justify the exercise of jurisdiction rests on its alleged

and subjective fear that negotiations "were effectively at a standstill" – a fear never

shared with SRI – and a "belief," based on unspecified statements, that SRI had

"indicated a willingness to enforce the patents."  But ISS admits in its papers that

SRI never expressly threatened to bring an action.  And even more fundamentally,

ISS ignores SRI's conduct, which demonstrated a consistent willingness to

continue high-level meetings between the parties.  SRI's actual conduct – a matter

on which there is no factual dispute – is simply inconsistent with the "imminence"

that is required to trigger application of the Declaratory Judgment Act.

ISS also fails adequately to address the Federal Circuit authority cited by

SRI.  That authority recognizes that "any time parties are in negotiation over patent

rights, the possibility of a lawsuit looms in the background" and explains that the

test for finding a "controversy" is a pragmatic one that does not turn on the

specifics of the language used in negotiations.  See EMC Corp. v. Norand Corp.,

89 F.3d 807 (Fed. Cir. 1996).  SRI was in the midst of active negotiations that not

even ISS contends were a mere pretext for delay, and which had not left ISS

"immobile" or "helpless."  Instead, SRI's behavior revealed a consistent desire to

avoid litigation in favor of business discussions. Rewarding ISS's secret filing of a

declaratory judgment action under these circumstances would be "inconsistent with

the sound policy of promoting extrajudicial dispute resolution," Id.

ISS claims it did nothing improper by concealing from SRI the fact that it

had filed the litigation.  Yet ISS offers no credible explanation for why it failed to

reveal this critical fact to SRI, if it was truly acting in good faith. Nor does ISS

explain why, during the August 20, 2004 conference call between the parties, ISS

asked questions regarding the dates and circumstances of the conception and

reduction to practice of the patented inventions. This information had nothing to

do with the stated purpose of the meeting – to assess the value of SRI's technology

– but everything to do with the priority date and validity of the patents, which

would be at issue in the litigation ISS had already secretly filed.

From these facts it appears that ISS made a subjective determination that

negotiations would fail, filed a lawsuit as a tactical measure to "protect its

interests" in securing what it believed to be an advantageous forum, and used the

ongoing meetings as a pretext to secure additional information in support of its

lawsuit under the guise of good faith negotiations. This Court should not reward or

abet such conduct, and should exercise its discretion to dismiss ISS's complaint.

## II.    ARGUMENT

### A.    The Objective Facts Do Not Support A Reasonable Apprehension Of Suit

The presence of an actual controversy within the meaning of the declaratory

judgment act depends on "whether the facts alleged, under all the circumstances,

show that there is a substantial controversy, between parties having adverse legal

interests, of *sufficient immediacy and reality* to warrant issuance of a declaratory

judgment." EMC Corp., 89 F.3d at 810 (emphasis added, citations omitted).

When ISS filed its suit it was simply not faced with a sufficiently immediate and

real threat of litigation from SRI.

As ISS admits, SRI never expressly threatened an enforcement action at all.

That ISS subjectively believed SRI's statements were "thinly-veiled" threats is

irrelevant. As the facts set out in the parties' declarations demonstrate, SRI's

behavior was even less "threatening" than the activities of a patentee described by

the Federal Circuit as "merely 'jawboning' which typically occurs in licensing

negotiations." Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed. Cir. 1992).

Nor can ISS provide any specifics to support its assertion that it believed

SRI "expressed a willingness to enforce" its patents. What exactly did SRI's

representatives allegedly say other than SRI would "consider" bringing a lawsuit in

the "right" circumstances? Such a statement does not constitute a threat of an

immediate infringement action. Furthermore, to the extent SRI's statement were in

any respect ambiguous, its conduct certainly clarified its intent. SRI had agreed to

and had participated in two telephone conferences after ISS had already secretly

filed suit. SRI made its highest level technical people available to discuss a broad-

based business agreement between the parties. SRI's Vice-President of Legal and

Business Affairs was personally involved in the meetings. Far from evincing an

imminent threat, SRI's actions were those of a patentee attempting in good faith to negotiate a business arrangement and to avoid litigation.

ISS attempts to make something of the fact that SRI "refused" to provide detailed infringement contentions as part of the negotiations. Yet ISS admits the parties made repeated attempts to mutually agree on an exchange of such information that would be acceptable to both, and that the last such discussion occurred after the suit was filed. That SRI was uncomfortable volunteering its legal and factual infringement position without some promise of receiving information of similar detail in return from ISS hardly suggests that SRI was not negotiating in good faith or was poised to file suit.

ISS's "justification" for filing is tenuous at best, and appears to be based on nothing more than its subjective fear that the license negotiations would eventually be unsuccessful. Yet ISS never shared that fear, or any belief that negotiations had "deteriorated," with SRI. In any event, a declaratory judgment plaintiff's subjective fear that negotiations may at some point fail is insufficient as a matter of law to establish a reasonable apprehension of an imminent suit by the patentee. See Phillips Plastic Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1053-4 (Fed. Cir. 1995)("the 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer."). Based on the totality of the

facts present here, the Court should find that, as of the date of filing, there was no objectively reasonable apprehension of suit and, therefore, no jurisdiction.

### B.    The Relevant Federal Circuit Authority Supports Dismissal

In its moving papers, SRI cited clear and controlling authority from the Federal Circuit that an actual controversy cannot exist until licensing negotiations have broken down, regardless of whether the parties have exchanged "magic words" such as charges of "infringement". See, e.g., Phillips Plastic, 57 F.3d at 1053-4; Shell Oil, 970 F.2d at 889. Moreover, Federal Circuit authority also establishes that where as here a declaratory judgment plaintiff files suit solely to gain commercial advantage in an ongoing licensing negotiation, a District Court should not exercise its jurisdiction to hear the case. See, e.g., EMC Corp., 89 F.3d at 814-15. ISS's attempt to evade the Federal Circuit precedent by citing a handful of out-of-circuit district court cases fails adequately to respond to this authority.

None of the district court cases cited by ISS are binding, nor are they even particularly persuasive. For example, in Ivoclar Vivadent, Inc. v. Hasel, No. 02-CV-0316E(F), 2003 WL 21730520 at *6 (W.D.N.Y. 2003), the Court found subject matter jurisdiction despite licensing negotiations based on the patentee's indication that it had already successfully enforced its patents against a competitor, as well as its statement that it "will be enforcing [its] patents against other

6

infringers." The Ivoclar Court distinguished Phillips Plastics, not on the basis of the Ivoclar patentee's express charge of infringement, but rather, based on all of the behavior by the patentee that caused the plaintiff to "…apprehend the imminent commencement of a patent infringement action." Id. Here, like Phillips Plastics and unlike Ivoclar, there was no behavior on the part of SRI that justified a conclusion by ISS that an infringement suit was imminent. To the contrary, and as explained above, SRI's consistent approach throughout its discussions with ISS was to find a business solution to the dispute.

In relying on Findwhat.com v. Overture Services, Inc., No. 02 Civ. 447(MBM), 2003 WL 402649 at *4 (S.D.N.Y. 2003), ISS suggests that the district court also purported to distinguish Phillips Plastics solely on the basis that in Phillips Plastics there was no express charge of infringement. In Findwhat.com, however, unlike here, the patentee indicated that the plaintiff had to accept the patentee's license terms or return a substantially similar counteroffer within two weeks. Id. at *2. ISS attempts to characterize SRI's statement that "it would like to determine within the next three to four weeks whether agreement can be reached" (Abramson Dec. Ex C) as a similar ultimatum. This statement did not create a reasonable apprehension of an imminent infringement suit, however, because expressing a desire for progress within a defined period is not the same

7

thing as issuing an ultimatum, and because SRI and ISS's negotiations in fact
continued for four months after this statement.  See, Sierra Applied Sciences, Inc.
v. Advanced Energy Industries, Inc., 363 F.3d 1361, 1374 (Fed. Cir. 2004) (finding
a diminishment of apprehension over time after an initial threat of an infringement
with no follow-up action by the patentee.)

To convince the Court that it should exercise jurisdiction despite ISS's
unsavory conduct in filing a secret suit then proceeding to attempt to extract
confidential information from SRI, ISS relies on Biogen, Inc. v. Schering AG, 954
F. Supp. 391 (D. Mass. 1996).  The Biogen court dubiously reasoned that the
plaintiff's decision to file but not serve suit, then to proceed with licensing
negotiations, somehow served to minimize the risk of unnecessary litigation.  Id. at
398.  SRI respectfully submits that, not only is it not binding on this Court, but the
Biogen court's reasoning is incorrect.  A party simply does not "minimize the risk"
of litigation by starting a lawsuit.  Rather, and as happened here, the likelihood is
that a "secret" filing will be discovered and will provoke an immediate and in-kind
response.  Far from "minimizing" the risk of litigation, the filing of a declaratory
relief action in the absence of an imminent threat will in most cases precipitate it.
The Declaratory Judgment Act was never intended to produce that result.

In light of ISS's disingenuous conduct, ISS's invocation of the first-to-file rule also should not persuade the court to exercise jurisdiction in this case. Indeed, the rule presupposes jurisdiction exists, which is not the case here. Moreover, exceptions to the first to file rule are not uncommon. Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993). Courts have made an exception to the rule in cases such as this where the plaintiff secretly files a declaratory judgment action in order to obtain a tactical advantage. Solo Cup Co. v. Fort James Corp., No. 99C4724 at *2, 1999 WL 1140885 (N.D. Ill. 1999); Lyons Industries Inc. v. American Standard Inc., 993 F. Supp. 609, 614 (W.D. Mich. 1997).

The only Federal Circuit authority directly relied upon by ISS in support of its position is Sierra Applied Sciences. ISS cites Sierra for the proposition that a bare charge of "infringement" is sufficient to confer subject matter jurisdiction. Sierra does not stand for this proposition. In Sierra, the Court based its finding of jurisdiction on the bellicose and threatening behavior of the patentee. In addition to making express charges of intentional infringement, the Sierra patentee stated it would "aggressively protect its rights," had "invested heavily in developing and protecting its technology" and would protect its exclusive position. Id. The Sierra patentee had also informed the plaintiff of additional patents that were about to issue that covered the relevant technology. Id. Indeed, the behavior of the

9

patentee in that case was clear enough that the parties agreed it established a

"reasonable apprehension" of suit. Id. at 1377.

SRI's actions in this case are sharply divergent from the patentee in Sierra.

Rather than state it would "aggressively enforce its patent rights" to secure its

exclusive position in the market, SRI said that it filed patent suits "very

infrequently". [Abramson Dec. ¶ 18.] Even more fundamentally, the parties in

Sierra were not involved in meaningful, ongoing licensing negotiations like ISS

and SRI. Rather, the parties there only exchanged letters, with the patentee's final

letter stating "if we do not hear by that date, we will act as and when we deem

appropriate without further notice." That is a far cry from the instant case, where

over a four month period, SRI and ISS engaged in extended licensing negotiations,

including an offer by ISS to license the SRI technology. Under such

circumstances, the law of the Federal Circuit is clear: "Where there are proposed or

ongoing licensing negotiations, a litigation controversy does not normally arise

until the negotiations have broken down." Phillips Plastics Corp., 57 F.3d at 1053.

ISS admits that at the time it filed its suit, licensing negotiations had not broken

down. [ISS Opposition at 19.] Accordingly, under binding Federal Circuit

precedent, no jurisdiction exists to support ISS's declaratory judgment action.

**C.    ISS's Conduct In Continuing To Meet While Not Informing SRI Of The Complaint Was Not In Good Faith**

ISS admits that it participated in two negotiation sessions after its suit was filed. ISS also admits that it participated in those discussions without informing SRI that it had filed suit. This behavior puts ISS on the horns of an ethical and logical dilemma, and one that is fatal to its declaratory judgment lawsuit.

On the one hand, ISS may have believed that participating in further settlement and licensing discussions with SRI would be productive. Certainly it appeared to SRI to hold that view, given the fact that several senior ISS executives, including ISS's Chief Technical Officer and Vice-President of Engineering, participated in the discussions. [Abramson Supp. Decl. at ¶ 2.] If that was in fact ISS's attitude, then it is illogical to conclude that it also believed the settlement discussions had failed and that a lawsuit was imminent, for why devote senior management time and attention to a futile effort? Under this scenario, then, neither ISS nor SRI believed that discussions had broken down or a lawsuit was imminent, and thus no jurisdiction exists to support a declaratory judgment action.

On the other hand, perhaps ISS believed that settlement talks had irretrievably broken down, that further discussions would serve no useful (and legitimate) purpose, and that a patent infringement lawsuit by SRI was an imminent likelihood. However, if that were ISS's view, what legitimate purpose

11

would be served by participating at a high management level in two further licensing discussions while keeping the fact of the filed declaratory relief action hidden? The answer, of course, is that ISS continued to participate in the "failed" discussions in an attempt to obtain information -- such as the information it sought about the dates of SRI's conception and reduction to practice of the technology, information that has nothing to do with determining whether such technology has value or fits within ISS's business – for use in the lawsuit. [Abramson Supp Decl. at ¶ 3-4.] Under this scenario, and following the Federal Circuit's precedent in EMC Corporation, this court should not reward ISS's tactically-motivated behavior, and should decline to exercise jurisdiction over ISS's declaratory relief action. Under either of these scenarios – and SRI sees no reasonable and credible third alternative -- SRI's motion to dismiss should be granted.

### D.   Exercising Jurisdiction In these Circumstances Would not Serve the Purposes of the Declaratory Judgment Act

Declaratory judgment actions in patent cases are designed to help a potential infringer who is being harmed in the marketplace by a patentee who delays in filing suit while at the same time "brandishing a Damoclean threat with a sheathed sword." Arrowhead, 846 F.2d at 734-35. The law recognizes that a potential infringer should not have its hands tied while a patentee disrupts its business by threatening customers, making public pronouncements of infringement, or

12

otherwise casting a cloud of uncertainty over a market. On the other hand, the Act was not intended to allow a clever infringer to game the system. ISS is using its complaint only as a tactic to "protect its interests" by securing "home field advantage" while telling SRI and the Court that it wants to avoid litigation.

In this case ISS was not being harmed in any way by any alleged delay on the part of SRI in bringing an infringement action. SRI had not contacted any ISS customer, made any announcement concerning ISS, or otherwise interfered in any way with ISS's ongoing business. SRI never threatened ISS with an injunction but, rather, offered ISS a license. ISS had no reason to "resort" to a declaratory judgment action under these circumstances. Indeed, all objective indications were that SRI wanted to negotiate and, hopefully, avoid litigation.

ISS asks this Court to support a rule which would allow a declaratory judgment plaintiff to make a unilateral, subjective determination that license negotiations are "likely to fail" at some time in the future and to use that subjective feeling to its advantage by usurping a patent owner's right, in the first instance, to have the question of patent infringement determined in a time, place and manner of its own choosing. In this case, even if negotiations with ISS had "failed," SRI may have chosen to pursue its negotiations with other potential infringers rather than

13

initiate litigation with ISS.[1]  Rather than serving the public policy of avoiding

unnecessary litigation, ISS's resort to a declaratory judgment complaint had the

opposite effect, virtually guaranteeing that a litigation would take place.[2]

    For ISS to suggest that it filed its complaint "in the hope of avoiding

litigation" is naïve at best and cynical at worst, given its conduct in keeping the

complaint hidden while using ongoing negotiations as a means to collect validity

and infringement-related information from SRI.  If ISS truly intended to take the

high road, why didn't it immediately inform SRI of the suit and explain its alleged

purpose in filing it?  Better yet, why didn't ISS raise its concern that SRI might sue

and seek a stand-still agreement or other assurances?  ISS's behavior must be seen

---

[1]  In fact, this is precisely what happened with Symantec Corporation, the other
defendant named in the co-pending infringement action filed by SRI in the
District of Delaware.  Beginning several months prior to SRI's discussions with
ISS, SRI and Symantec held licensing discussions regarding the patents at issue
in the present action.  [Abramson Supp. Decl., at ¶ 5.]  When those discussions
failed to achieve an agreement, SRI did not promptly file suit against Symantec,
but instead pursued licensing discussions with ISS.  Only after ISS filed the
instant declaratory relief action did SRI reluctantly conclude that it would
require legal action to obtain relief against these two companies.  Id.

[2]  SRI cannot be faulted for responding when it learned of ISS's complaint and
duplicity.  Although SRI wanted to avoid litigation, once it realized litigation
was going to proceed, SRI responded by filing an infringement action in a more
appropriate forum for enforcing its patent interests.  If litigation must ensue, it
should go forward in SRI's choice of location, not ISS's.  Of course, SRI would
still like to avoid protracted litigation in any forum, but it is ISS's actions that
appear to have made such an outcome unlikely.

for what it is; an attempt to seek tactical advantage and prepare for litigation while disingenuously leading SRI along in what SRI believed were good faith discussions of a potential business solution. Exercising jurisdiction under these circumstances would not further the purposes of the Declaratory Judgment Act, nor would it further the important public and judicial policy of promoting the extrajudicial resolution of disputes.

## III.  CONCLUSION

ISS prematurely filed this declaratory judgment action for tactical purposes to achieve a perceived advantage in its negotiations with SRI. ISS was not being harmed by any "delay" on the part of SRI, as there was no activity in the market that could affect ISS's commercial interests. Even if ISS was subjectively concerned that its ongoing negotiations with SRI would ultimately not succeed, this subjective fear does not as a matter of law support an objectively reasonable apprehension of an imminent infringement suit by SRI, especially in view of SRI's conduct in continuing to commit its time and high-level personnel to further the discussions. Finally, ISS's failure to tell SRI of the suit and to subsequently seek confidential information from SRI, the only purpose of which could have been to bolster its litigation positions, is not behavior the Court should reward. Rather, the Court should dismiss ISS's complaint.

Dated:  October 18, 2004                  FISH & RICHARDSON P.C.


By: _____
       John L. North (GA Bar No. 545580)
       Ann G. Fort (GA Bar No. 269995)
       Sutherland Asbill & Brennan LLP
       999 Peachtree Street, N.E.
       Atlanta, Georgia 30309-3996
       Telephone: (404) 853-8000
       Facsimile: (404) 853-8806

       Howard G. Pollack (CA Bar No.
       162897)
       Michael J. Curley (CA Bar No.
       230343)
       500 Arguello Street, Suite 500
       Redwood City, California 94063
       Telephone: (650) 839-5070
       Facsimile: (650) 839-5071

    Attorneys for Defendant
    SRI INTERNATIONAL, INC.

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, the undersigned counsel hereby certifies that the foregoing **SRI INTERNATIONAL, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)** complies with the font and point selections approved by the Court in LR 5.1B. The foregoing Memorandum was prepared on a computer using the Times New Roman font (14 point).

_____
ANN G. FORT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

INTERNET SECURITY SYSTEMS,
INC., a Georgia Corporation,

        Plaintiff,

v.

SRI INTERNATIONAL, INC., a
California Corporation,

        Defendant,

Civil Action No. 04-CV-2402-CC

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that on October 18, 2004

a copy of the within and foregoing **SRI INTERNATIONAL, INC.'S REPLY IN**

**SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)**

was served upon counsel for Plaintiff, properly addressed as designated below:

### VIA HAND DELIVERY

Holmes J. Hawkins, III
Natasha Horne Moffitt
King & Spalding
191 Peachtree Street N.E.
Atlanta, GA  30303-1763

Attorneys for Plaintiff
Internet Security Systems, Inc.

_____

ANN G. FORT

2